McMANUS v. AMERICAN WOOLEN CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. May 15, 1908.)

1. SALES—FAILURE TO DELIVER—DAMAGES—EVIDENCE.

Plaintiff in an action for failure to deliver goods under a contract of sale could not show specific contracts for resales at a profit, where the goods had a market price at the time and place of delivery

2. SAME.

In an action for failure to deliver goods between April 1st and October 1st, under a contract of sale, it was improper to permit the jury to consider testimony as to resales made by plaintiff in January and February as bearing upon the market price during the period when defendant was required to make deliveries.

Appeal from Trial Term.

Action by Terence J. McManus against the American Woolen Company of New York. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Ralph Wolf (Daniel P. Hays and Edwin D. Hays, on the brief), for appellant.

Frederick Wiener, for respondent.

LAUGHLIN, J. This is an action by a vendee of merchandise to recover damages of his vendor for its failure to deliver woolen goods known as "tans" and "castors" in accordance with the terms of two orders in writing, constituting the contract. Both orders were given on the same day. One of the orders was for 392 pieces of "castors" at $1.35 per yard, and the other order was for 146 pieces of "tans" at $1.55 per yard, sample pieces to be delivered in January, February, and March, and the balance between the 1st day of April and the 1st of October. The defendant shipped and delivered 62 pieces of "castors" and 8 pieces of "tans," but failed to ship or deliver the balance. The contract provided that the pieces were to average 40 yards, but those delivered averaged about 50 yards. The plaintiff gave evidence tending to show that from April to October the market price of both classes of goods steadily advanced, the market price of "castors" obtaining a maximum of from $2.10 to $2.25 per yard, and $2.35 per yard for "tans," and that the average lowest market price for "castors" at any time during this period was about $1.62½ to $1.70 per yard, and the lowest market price for "tans" during the same period was $1.80 per yard, and that upon the basis of the lowest market price he sustained a loss of $5,739, being the difference between that and the contract price. The plaintiff, in addition to showing that there was a market price for similar goods at all times during the period for delivery specified in the contract, was permitted to show, over the defendant's objection and exception duly taken, that the evidence was immaterial and not the proper measure of damages; that, in reliance upon these contracts, he placed three orders for the sale of part of the goods, one with Adams & Co. for 40 pieces of "castors" at $2.10 per yard, and 60 pieces of

"tans" at $2.35 per yard, deliveries to be made during the months of May, June, July, and August, another with Brady & Funt for 50 pieces of "castors" at $1.62½ per yard, and 50 pieces of "tans" at $1.90 per yard, sample pieces to be delivered in February and March, and the goods themselves in May, June, July, and.August, and the third with Edward Bloch for 15 pieces of "castors" at $1.62½ per yard and 15 pieces of "tans" at $1.80 per yard, which were the prevailing market prices in January and February, and that he was unable to make any deliveries under these orders, and sustained damages thereby in loss of profits over and above the lowest market price, aggregating about $2,200. The ·jury awarded a verdict in favor of the plaintiff for $5,658.62, with interest from October 1, 1902, which was computed by consent and added without objection before the jury were discharged, making a total recovery of $6,875.22. The court in submitting the case to the jury drew attention to the fact that plaintiff claimed damages in the sum of $7,939, estimating the pieces at 40 yards, and $9,872.50, estimating the pieces at 50 yards. These figures embraced the profits on the three sales aggregating $2,200, in addition to the difference between the contract price and the lowest market price at which plaintiff could have gone into the open market and have purchased similar goods to fill the orders placed with others. The court in the main charge said to the jury:

"The general rule, as I have stated, is that the party injured by a breach of contract is entitled to recover all his damages, and that includes gains prevented as well as losses sustained, provided they are certain and such as might naturally be expected to follow the breach. It is only uncertain and contingent profits therefore which the law excludes, not such as are the immediate and necessary result of the breach of the contract. They may be fairly supposed to have entered into the contemplation of the parties when they made their contract, and, if capable of being definitely ascertained by reference to established market rates, would be awarded the plaintiff."

The court, thereafter, at the request of counsel for the defendant, instructed the jury that, if they found that the goods had a market price, the plaintiff could not recover both general damages, being the difference between the contract and market price and profits lost or which might have been made by him or which were actually made by him. The court also instructed the jury, at the request of counsel for the defendant, that in determining the question of market value they should not take into consideration "prices at which plaintiff claims he may have sold some of these goods to customers." Counsel for the defendant also asked the court to instruct the jury that, in considering the question of market value, they should not consider the testimony of the plaintiff in regard to the three sales hereinbefore mentioned. This request was declined, and an exception was duly taken. The court also declined to charge a specific request made by counsel for the defendant that, if the goods had a market value at the time and place of delivery, then the only damages which the plaintiff may recover is the difference between the contract price and the market value of the goods at the time and place of delivery, and they must eliminate in the computation of damages any and all testimony as to profits which plaintiff might have made in the event that the goods sold by defendant to him had been delivered; also,

in that event, they must eliminate and disregard the testimony as to· the resales claimed to have been made by the plaintiff of the goods purchased from the defendant, and also, in that event, they must disregard the testimony in regard to the prices realized by the plaintiff on the resale of the goods actually sold and delivered by defendant to· him; also in that event' they should disregard in the computation of plaintiff's damages the profits claimed to have been made by him on· the resales of the goods actually sold and delivered by defendant to· him. It sufficiently appears that the goods actually delivered by defendant were not considered in estimating the damages.

The defendant gave evidence tending to show that the market price· of the goods during the period during which delivery was to be· made was much lower than that shown by the evidence introduced in behalf of plaintiff. Upon the record and charge, it is impossible to· determine accurately the basis upon which the jury computed the· plaintiff's damages. It appearing that the goods had a market price, it was error to receive evidence of the specific sales and it was also· error to submit that evidence to the jury. Moreover, it appears that the time of delivery pursuant to the three orders placed by the plaintiff was different from the time of delivery under the contracts between plaintiff and defendant. Under the contracts, the defendant was at liberty to deliver the goods at any time between the 1st day of April and the 1st day of October. The court also erred in permitting the jury to consider the testimony of the three specific sales. made in January and February as bearing upon the market price· during the period of delivery specified in the contract, which did not commence until the 1st day of April thereafter.

It follows that the judgment· and order should be reversed and a: new trial granted, with costs to appellant to abide the event. All' concur.